```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------x
MICHELINA TANZI,

                Plaintiff,

      -against-                         **MEMORANDUM AND ORDER**
                                        Case No. 17-CV-7182 (FB)
COMMISSIONER OF SOCIAL
SECURITY,

                Defendant.
--------------------------------------------------x
```

Appearances:
*For the Plaintiff*:                *For the Defendant*:
DANIEL A. OSBORN                    RICHARD P. DONOGHUE
Osborn Law, P.C.                    United States Attorney's Office
43 West 43rd Street, Suite 131      Eastern District of New York
New York, NY 10036                  271 Cadman Plaza East
                                    Brooklyn, NY 11201
                                    BY: EDWIN R. CORTES

**BLOCK, Senior District Judge:**

Michelina Tanzi seeks review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits. Both parties move for judgment on the pleadings. The Commissioner found that Tanzi is able to perform medium exertion work with several environmental and postural limitations. Taking these limitations into account, the Commissioner found that there exists work in significant numbers in the national economy that Tanzi can perform. The Court denies both motions and remands for further proceedings.

# I.

Tanzi applied for disability benefits on September 16, 2014, alleging an onset date of January 10, 2014.  Her alleged impairments include disk herniations in her neck, arthritis in her neck, bulging disk and herniation in her left lower lumbar spine, arthritis in both her knees, heart murmur, and a high fracture risk due to lumbar spine and neck osteopenia.  These impairments stem in part from an unspecified lumbar disc injury that she suffered around 2000, as well as from a 2006 car accident.  She continued working until 2014 when her symptoms worsened.

Tanzi appeared with counsel before Administrative Law Judge ("ALJ") Jack Russak who denied the application by written order.  His decision became final on October 11, 2017 when the Appeals Council denied review.

The evidence developed by the ALJ was as follows.

**A.     Medical Evidence**

Tanzi was born on May 15, 1958.  She is five feet and two inches tall.  As of 2016, she weighted 175 pounds, resulting in a body mass index of approximately 33.

Tanzi's medical record shows an extensive range of musculoskeletal problems, including disc disease, arthritis, chronic lumbrosacral radiculopathy, crepitus in the knees, degenerative joint disease, hyperlipidemia, spondylosis, disk protrusion, osteopenia, and osteoporisis.  She has been prescribed several medications for pain management.

Although many healthcare providers contributed to Tanzi's medical record, only three names are important for this decision: Dr. Eliyahu Kopstick, a treating physician; Dr. Christopher Lorenzi, another treating physician; and Alex Yegorov, a physical therapist. Mr. Yegorov's assessment of Tanzi's functional limitations was endorsed by Dr. Kopstick and assessed by the ALJ. In addition, Dr. Lorenzi wrote two bone density reports for Dr. Kopstick. The first report, which was completed in April 2014, diagnosed "lumbar spine and femoral neck osteopenia," with an "approximat[ion] [of] high fracture risk." Administrative Record ("AR") at 317. The second report, which was completed in February 2017, diagnosed "lumbiar spine osteoporosis with slight interim demineralization." AR at 620. Dr. Lorenzi again opined that Tanzi was "at high fracture risk." *Id.*

**B.     Testimonial Evidence**

  1.     <u>Tanzi's Testimony</u>

Tanzi testified that her brother drove her to the hearing. She lives on the second floor of a walkup building, and though she is able to navigate the stairs, it is a long and painful process. She owns a car and is able to drive herself, but she drives infrequently and only for short distances. Her brother drives her to buy groceries and helps her with household chores such as laundry. She microwaves frozen meals and performs only slight cleaning around her apartment, such as washing a few dishes and lightly wiping counters. She spends time in her apartment taking long

3

baths or talking on the phone. Occasionally, she visits her elderly mother who lives nearby.

Tanzi explained that she experiences considerable pain in her day-to-day life, including in dressing herself and lying on her stomach or her side. She also testified that sitting in most chairs is painful for her. *See, e.g.*, AR 76 ("[E]ven this chair is uncomfortable."); *id.* at 77 ("I have to sit on a very hard chair. This is too soft for me."). She takes a variety of medication for her conditions, some of which she listed at the hearing, *see* AR at 74, but she testified that none is particularly effective.

2. Vocational Expert's Testimony

Vocational Expert ("VE") Melissa Fass Karlin also testified at the hearing. Ms. Fass Karlin testified that Tanzi's previous jobs are classified as either sedentary or light exertional work, some of it skilled, some semi-skilled, and some unskilled.[1] The VE testified that an individual matching characteristics similar to Tanzi's could perform those jobs as they exist in the national economy, including with a 5% off-time allowance for breaks. She testified, however, that an individual could not perform any of those jobs with a 20% off-time allowance for breaks.[2]

---

[1] Her employment history includes work as a legal secretary, secretary, sales clerk, and cashier.
[2] The VE's answers were based on the jobs as they are classified in the Dictionary of Occupational Titles. The VE noted, however, that Tanzi's testimony indicated that she actually performed her past sedentary jobs at a light exertional level.

## C. ALJ's Decision

The ALJ rendered his decision on March 3, 2017. Applying the familiar five-step sequential evaluation process,[3] he concluded at step one that Tanzi has not engaged in substantial gainful activity since the alleged onset date; at step two that she had several severe impairments, including "cervical spine protrusion, spondylosis, degenerative lumbar and cervical radiculopathy, myofascial pain, arthritis of the cervical spine and knees, and obesity," AR at 42; and at step three that none of the severe impairments meets or equals the severity of specified impairments in the Listing of Impairments. He next calculated Tanzi's residual functional capacity ("RFC") as follows:

> [Tanzi] has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except [she] is limited to occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds; occasionally stoop, but never balance, crouch, kneel, or crawl; and never be exposed to moving machinery or unprotected heights. [She] is also limited to never operate foot controls bilaterally; never push or pull with the upper extremities; no frequent and rapid movements of the neck; frequently reach bilaterally, but no overhead

---

[3] The Commissioner must determine "(1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience." *McIntyre v. Colvin*, 748 F.3d 146, 150 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The burden of proof is on the claimant in the first four steps, but shifts to the Commissioner at the fifth step. *Id.*

reaching; frequently handle objects, that is gross manipulation; frequently fingering, that is fine manipulation of items no smaller than the size of a paper clip; and frequently feel. Due to physical fatigue, [she] will be allowed off task five percent of the day, in addition to regularly scheduled breaks.

AR at 43. At step four, the ALJ found that Tanzi could perform some of her previous work and was therefore not disabled.[4]

## II.

"In reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971): it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (quoting *Perales*, 402 U.S. at 401). "The court may not substitute

---

[4] The ALJ found that Tanzi "is able to perform her jobs as a secretary or as a legal secretary as they were actually performed," AR at 47, but then recited the VE's testimony that Tanzi "would be able to perform her past relevant work as a legal secretary or secretary as it is generally performed in the national economy, *but not as it was actually performed*," *id.* (emphasis added). This seeming inconsistency is ultimately inconsequential, however, because "[a]t the fourth stage of the [Social Security Act] inquiry, the claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Albano v. Colvin*, 99 F. Supp. 3d 355, 367–68 (E.D.N.Y. 2015) (alterations omitted) (emphasis in original) (quoting *Jasinki v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003)).

its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Tanzi challenges the Commissioner's decision on three grounds. First, she argues that the Commissioner committed legal error by failing to address her osteopenia and osteoporosis diagnoses and did not consider how those conditions render her at a heightened risk of bone fracture. In a similar vein, she argues that the Commissioner erred by not addressing her obesity diagnosis and how that condition affects her functional capacity. Finally, she argues that the ALJ's RFC finding is not supported by substantial evidence.

A.     **Osteopenia and Osteoporosis**

Tanzi faults the Commissioner for not considering Dr. Lorenzi's osteopenia and osteoporosis diagnoses and his opinion that she is at high risk of fracture. She argues that the ALJ's RFC finding is inconsistent with such a risk. The Commissioner argues that the ALJ's finding is sound because no doctor opined on a functional limitation based on osteopenia or osteoporosis, even though Dr. Kopstick was aware of it (since Dr. Lorenzi reported it to him). Pointing out that it is the claimant's burden to demonstrate that an "impairment 'has resulted in functional limitations that prevent him from engaging in any substantial gainful activity,'" *Faucette v. Comm'r of Soc. Sec.*, No. 13-CV-04851, 2015 WL 5773565, at *1

(S.D.N.Y. Sept. 30, 2015) (quoting *Garcia v. Apfel*, No. 97-CV-4035, 1998 WL 599714, at *4 (S.D.N.Y. Sept. 10, 1998)), the Commissioner contends that Tanzi's argument fails because none of the medical evidence lists functional limitations based on osteopenia or osteoporosis.

The Court would agree with the Commissioner if there were any indication that the ALJ had in fact considered this evidence. A close reading of the decision, however, reveals that he did not.

First, the decision does not mention either osteopenia or osteoporosis. Moreover, it does not mention Dr. Kopstick or Dr. Lorenzi at all. The closest that the decision comes to even acknowledging these two doctors is in his rejection of Mr. Yagorov's opinion concerning Tanzi's functional limitations, which, as previously mentioned, had been endorsed by Dr. Kopstick. But while Dr. Kopstick adopted Mr. Yegorov's opinion, he also had the benefit of Dr. Lorenzi's bone density report. In contrast, none of the physicians with whom Mr. Yegorov disagreed—and, by extension, with whom Dr. Kopstick disagreed—had access to that report. (Indeed, it is not even clear whether Mr. Yegorov had access to the report.) Therefore, the ALJ's rejection of Mr. Yegorov's opinion as "inconsistent with the medical opinions" of other physicians does not demonstrate that he considered Dr. Kopstick's views, which were informed by Dr. Lorenzi's opinion that Tanzi was at high risk of fracture due to osteopenia and osteoporosis. In other words, Tanzi is

correct in her conclusion that the Commissioner simply did not consider that impairment or the potential functional limitations it might impose.

The Commissioner's own regulations warn patients that the Administration "will consider only impairment(s) you say you have or about which we receive evidence." 20 C.F.R. § 404.1512(a). Conversely, "[i]t is not proper for the ALJ to simply pick and choose from the transcript only such evidence that supports his determination, without affording consideration to evidence supporting the plaintiff's claims." *Sutherland v. Barnhart*, 322 F. Supp. 2d 282, 289 (E.D.N.Y. 2004). "Restated, the ALJ must consider all evidence in the record." *Ryan v. Astrue*, 650 F. Supp. 2d 207, 216 (N.D.N.Y. 2009).

Here, osteopenia was one of Tanzi's claimed impairments, and the diagnosis was supported by medical tests included in her record. In other words, it was both an "impairment[] [she] sa[id] [she] ha[d]," and one "about which [the Commissioner] receive[d] evidence." § 404.1512(a). But there is no indication that the Commissioner considered the impairment or the resulting functional limitation. The Court must therefore remand for him to reconsider the RFC, taking Dr. Lorenzi's and Dr. Kopstic's opinions into account. *Accord Miles v. Barnhart*, No. 06-CV-00391, 2008 WL 5191589, at *7 (N.D.N.Y. Dec. 8, 2008) (holding that an ALJ's complete failure to address an increased risk for hip fracture due to osteopenia "taints the remainder of the ALJ's findings" and requires remand).

B.   **Obesity**

Tanzi argues that the ALJ's additional failure to discuss her obesity similarly requires remand. Although the ALJ did list obesity as one of Tanzi's severe impairments, he did not discuss it in any other part of the decision or explicitly discuss how it affects the RFC. As before, the Commissioner replies that Tanzi's obesity was known to all of her doctors, and the ALJ was entitled to assume that they factored it into their opinions on her functional limitations.

Here, the Commissioner's logic is sound. Unlike osteopenia and osteoporosis, which are diagnoses that were only made after a specialized bone density test, Tanzi's obesity was known or apparent to all of her doctors. The ALJ was entitled to rely on their assessments of her functional limitations and assume that they took the condition into account. *See Talavera v. Astrue*, 500 F. App'x 9, 11 (2d Cir. 2012) ("With respect to Talavera's obesity, several of Talavera's treating and examining physicians—all of whom were aware of her obesity—concluded that her weight only imposed mild limitations on her functional abilities."). He did not need to explicitly mention it to show that he considered it. *Cf. Pena v. Chater*, 968 F. Supp. 930, 939 (S.D.N.Y. 1997) ("In light of the overwhelming medical and testimonial evidence supporting the Commissioner's decision, the Court finds that ALJ Goldman need not have explicitly stated on the record whether or not Pena has lost his ability to voluntarily control his drinking.").

C.  **Substantial Evidence**

Because remand is appropriate based on the Commissioner's error to consider Tanzi's osteopenia and osteoporosis diagnoses, the Court declines to consider the parties' alternative arguments as to whether the Commissioner's decision is otherwise based on substantial evidence.

**III.**

For the foregoing reasons, both motions for judgment on the pleadings are denied and the case is remanded for further proceedings consistent with this Memorandum and Order

**SO ORDERED**.

<u>Frederic Block</u>
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
June 13, 2019